UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILFREDO PEREZ,

    Plaintiff,

v.                        Case No: 2:14-cv-558-FtM-29CM

WICKER, Officer, sued in his
individual capacities,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court upon review of Defendant's Motion for Summary Judgment (Doc. #24) filed on October 5, 2015. Despite being directed by the Court (Doc. #27), plaintiff did not file a response in opposition. (See docket.) Therefore, this matter is ripe for review.

**I.**

Plaintiff Wilfredo Perez, initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 (Doc. #1) against defendant Wicker in his individual capacity. Plaintiff is a resident at the Florida Civil Commitment Center ("FCCC") in Arcadia, Florida. The Amended Complaint alleges a Fourteenth Amendment claim stemming from defendant's use of excessive force. (Doc. #8.) Specifically, plaintiff alleges defendant Wicker used excessive force when he slammed plaintiff to the ground for no reason. According to the Amended Complaint, on May 8, 2014, defendant

Wicker escorted plaintiff from his cell to Dr. Michael's office to discuss certain medication. (Id. at p. 3.) Plaintiff was placed in marshal restraints during the escort. (Id.) Plaintiff spoke with Dr. Michael and when he walked out of Dr. Michael's office for "reasons unknown to plaintiff" Officer Wicker body slammed plaintiff to the floor. (Id.) Plaintiff suffered extreme pain and suffering in his hip and back areas. (Id.) Plaintiff asserts he "did not provoke, encourage, and/or verbally or physically resist being escorted by Officer Wicker." (Id.)

Defendant asserts he is entitled to summary judgment because the use of force was necessary under the circumstances and there is no evidence plaintiff was injured as a result. (Doc. #24.) In support of his motion for summary judgment, defendant submits the following exhibits: (1) Affidavit of Dennis McGee (Doc. #24-1, pp. 1-2); (2) Plaintiff's medical records relating to the incident (Doc. #24-1 pp. 2-4); (3) Affidavit of Scott Wicker (Doc. #24-2); and (4) Video footage of the incident (Doc. #25). Plaintiff did not file a response opposing defendant's motion.

## II.

**A.   Summary Judgment Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if

the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces

a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**B.    42 U.S.C. Section 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh, 268 F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

**C.    Civil detainees at the FCCC are not prisoners**

Plaintiff is civilly committed, the FCCC is not a prison, and plaintiff is not a prisoner. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has recognized that an individual who has been involuntarily civilly confined has liberty interests under the Due Process Clause of the Fourteenth Amendment that "require the State to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint." Youngberg v. Romeo, 457 U.S. 307, 319 (1982). Thus, the Supreme

Court has opined that, at least in regards to certain aspects of civil detainees' confinement, they are afforded a higher standard of care than those who are criminally committed. Id. at 321–322; Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996) (holding that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.")(quoting Youngberg, 457 U.S. at 322 (internal quotation omitted)); see also Lavender v. Kearney, 206 F. App'x 860, 863 (11th Cir. 2006).  Nonetheless, case law relevant to defining the contours of constitutional rights afforded to prisoners is relevant in evaluating a claim brought by a person who is involuntarily civilly committed. Id.

This, however, does not mean that civil detainees are free to live within the FCCC without any restrictions or limitations.  The FCCC residents, like pretrial detainees who are facing criminal charges or detainees confined in mental hospitals, are not entitled to the same unrestricted liberties as persons in the outside world. While residents may object to having to comply with the FCCC's rules and restrictions, or orders given by staff at the institution, neither the fact of their existence nor their imposition gives rise to a constitutional violation because such does not constitute punishment.  Indeed, the Supreme Court observed this point, opining in pertinent part, as follows:

> Once the Government has exercised its conceded authority to detain a person . . . it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial.  Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain.  Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility.  And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

Bell v. Wolfish, 441 U.S. 520, 537 (1979).

The need to curtail potentially violent conduct is an "obligation" incumbent upon the operators of the FCCC. Washington v. Harper, 494 U.S. 210, 225 (1990) (stressing that the state has not only an interest, but an obligation, to combat any danger posed by a person to himself or others, especially in an environment, which by definition is made up of persons with a demonstrated proclivity for antisocial criminal, and often violent, conduct). Consequently, staff at the FCCC are tasked with the arduous responsibility of rendering treatment consistent with the goals of the SVP Act while ensuring the safety of not only themselves and other administrative personnel, but of all residents who are confined at the FCCC.  The Supreme Court has recognized that the

"interest in institutional security" and "internal security" is paramount. Hudson v. Palmer, 468 U.S. 517, 528 (1984).

**D.  Excessive Use of Force**

The analysis under the Fourteenth Amendment is the same for both pretrial detainees and those civilly committed. See Youngberg v. Romeo, 457 U.S. 307, 321 (1982) (applying Bell v. Wolfish to a claim by a civilly committed plaintiff); see also Davis v. Wessel, 792 F.3d 793, 800 (7th Cir. 2015). Accordingly, the Supreme Court's recent decision in Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), provides the applicable standard for claims of excessive force against a civilly committed detainee.

Under Kingsley, the Due Process Clause of the Fourteenth Amendment requires only that plaintiff show "that the force purposely or knowingly used against him was objectively unreasonable." Id. at 2473. The inquiry into objective unreasonableness is not mechanical; it depends on the facts and circumstances in each case. Id. (citations omitted). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. The Supreme Court has provided a non-exhaustive list of factors to consider when determining reasonableness:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort

        made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.

A court must also consider "'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in the judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" Id. (quoting Bell, 441 U.S. at 540).

### IV.

**A. Material Facts**

The undisputed facts show that on May 8, 2014, plaintiff was escorted to FCCC psychiatrist Dr. Michael's office by security including defendant Wicker. (Doc. #24-1, ¶ 4; Doc. #24-2, ¶ 4.) Registered Nurse Dennis McGee was present at plaintiff's meeting with Dr. Michael. (Id.) Due to plaintiff's known history of violence in the facility, he was considered a high risk resident and presented to Dr. Michael in waist cuffs. (Id.) Plaintiff was on one-on-one observation due to self-injurious behavior. (Id.)

Plaintiff requested that security stand outside of Dr. Michael's door for privacy and Dr. Michael agreed. (Doc. #24-1, ¶ 5; Doc. #24-2, ¶ 5.) Security stood outside Dr. Michael's office leaving the door ajar. (Id.) Although plaintiff was calm at the

beginning of Dr. Michael's interview, plaintiff's behavior rapidly escalated. (Doc. #24-1, ¶ 6.) Plaintiff became angry, verbally abusive, and physically threatening. (Id.) Plaintiff got out of his seat and leaned over the desk towards Dr. Michael and said in a loud threatening manner, "I want to kill somebody." (Id.) At that point, security intervened, the interview was terminated, and Wicker escorted plaintiff from Dr. Michael's office. (Doc. #24-1, ¶ 7; Doc. #24-2, ¶ 6.)

While Wicker was escorting plaintiff down the hallway, plaintiff turned towards Wicker and Wicker directed him forward. (Doc. #24-2, ¶ 7; Doc. #25.) Then, plaintiff hit Wicker with his elbow and turned towards him again. (Id.) Wicker then took plaintiff to the ground. (Id.) Another officer came to assist Wicker. (Id.) Wicker and the other officer then helped plaintiff off the ground and continued escorting him away from Dr. Michael's office. (Id.)

Wicker has personally witnessed plaintiff attack and verbally abuse staff at FCCC prior to the incident. (Doc. #24-2, ¶ 4.) Wicker was personally threatened by plaintiff in the past on multiple occasions. (Id.) Plaintiff is known as one of the most violent and unpredictable residents at FCCCC. (Id.)

Plaintiff was seen by Nurse McGee after the incident in the hallway with Wicker. (Doc. #24-1, ¶ 8.) At no time did plaintiff

claim he was injured from the incident with Wicker or appear injured in any way. (Id.; Doc. #24-2, ¶ 7.)

### B. Application of law to facts

Whether Wicker's conduct was objectively unreasonable depends on what plaintiff was doing at the time, and whether the force used against plaintiff, judged from Wicker's perspective, was excessive in relation to a legitimate governmental objective, such as maintaining order. Kingsley, 135 S. Ct. at 2473-74. The Court finds the facts alleged by plaintiff are not sufficient to show that the force Wicker used against plaintiff was objectively unreasonable so as to violate plaintiff's constitutional rights. Id. Viewing the facts in the light most favorable to plaintiff, the Court concludes that Wicker's use of force was reasonable under the circumstances.

The record shows that plaintiff elbowed Wicker in the stomach which led Wicker to use enough force to push plaintiff onto the ground and hold him there until another officer was present. (Doc. #25.) Plaintiff was then helped up by both officers. (Id.) Plaintiff showed no signs of injury after the incident. (Doc. #24-1, ¶ 9.) Plaintiff has a history of and propensity for violence and is considered a high risk resident at the FCCC. (Doc. #24-1, ¶. 4; Doc. #24-2, ¶ 4.) The undisputed record shows that Wicker was aware of plaintiff's prior history of violence and defendant believed plaintiff's conduct posed a security risk.

(Doc. #24-2, ¶¶ 4, 7.)  Petitioner's aggressive behavior as shown by the video footage makes it clear that plaintiff was the initial aggressor and Wicker acted reasonably under the circumstances. (See Doc. #25.)  After reviewing all of the evidence in plaintiff's favor, the Court concludes that Wicker used reasonable force in a good-faith effort to curtail plaintiff's violent conduct.

Furthermore, plaintiff does not allege more than a *de minims* injury.  Plaintiff does not allege that his injuries required medical attention or that he even requested medical care, and there is no evidence in the record of plaintiff receiving medical care for his injuries.  The Eleventh Circuit has repeatedly held that a push or shove that causes pain and necessitates no, or merely minor, medical treatment is not a constitutional violation, even where the prisoner was restrained and no further force was necessary.  See, e.g., Jones v. City of Dothan, 121 F.3d 1456, 1460-61 (11th Cir. 1997); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994).  Furthermore, a conclusory allegation that the prisoner suffered serious injury should be discounted, and the absence of further evidence of injury justifies the conclusion that the use of force on the prisoner was minimal.  Brown v. Smith, 813 F.2d 1187 (11th Cir. 1987); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).

Drawing all inferences in favor of plaintiff, the Court finds that Wicker acted reasonably under the circumstances. Accordingly, the Court finds defendant is entitled to summary judgment.

ACCORDINGLY, it is hereby

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. #24) is **GRANTED**. The Clerk of Court shall terminate any pending motions, enter judgment accordingly in favor of defendant, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this __29th__ day of June, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-2
Copies: All Parties of Record